**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| DANIEL CELLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-00814-TWP-MKK |
| | ) |
| LILLY USA LLC, | ) |
| THE LILLY SEVERANCE PAYMENT PLAN, | ) |
| THE LILLY SEVERANCE PAY PLAN, | ) |
| | ) |
| Defendants. | ) |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNT II OF PLAINTIFF'S SECOND AMENDED COMPLAINT

This matter is before the Court on Defendants Lilly USA LLC, The Lilly Severance Payment Plan, and the Lilly Severance Pay Plan's (collectively, "Lilly") Motion to Dismiss Count II of the Plaintiff's Second Amended Complaint ("the Complaint"). (Filing No. 23.) After his discharge in August 2022, Daniel Cella ("Cella") initiated this action to recover severance benefits from the Lilly Severance Pay Plan ("the Plan") under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). (*See* Filing No. 21 at 7.) Cella further alleged that Lilly unlawfully interfered with the attainment of his severance benefits in violation of ERISA § 510, 29 U.S.C. § 1140. *Id.* at 8. Lilly now moves to dismiss Count II of the Second Amended Complaint, the § 510 claim, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Lilly's motion is **granted**.

### I. BACKGROUND

The Court accepts the following facts as true and considers them in a light most favorable to Cella, as the Court must when considering a Rule 12(b)(6) motion. *Bielanski v. Cnty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

A. **Factual Background**

Cella began his employment with Lilly as a Sales Representative in July 2000 and remained with the company until his termination in August 2022. ([Filing No. 21](#) ¶ 7.) During those twenty-two years, Cella maintained a clean disciplinary record and was promoted at least twice: once in 2021 to Thought Leader Liaison, and again in 2022 to Senior Director in Lilly's dermatology department. *See id.* ¶¶ 15, 30, 40.

In October 2021, Cella and the "Centralized Congress Team" began planning for a weekend-long dermatology conference scheduled for March 2022. *Id.* ¶ 15. With five months left until the conference began, the Centralized Congress Team encouraged employees to book their own hotel rooms at the Boston Renaissance Hotel while space was still available. *Id.* ¶ 16. Cella obliged and used Lilly's travel booking system, Concur, to reserve his room. *Id.* ¶ 17.

One month before the conference, Cella received an external email with a link to register for the conference and to book a hotel room. *Id.* ¶ 19. Having forgotten that he had already booked a room at the Boston Renaissance Hotel, he used the link to reserve a second room at another hotel, the Boston Park Plaza where he ultimately stayed. *Id.* ¶¶ 20–23.

On March 26, 2022, Cella gathered for a meal with colleagues at the Boston Renaissance Hotel. *Id.* ¶ 24. After the conference events concluded for that day, Cella returned to the Boston Park Plaza. *Id.* ¶ 25. When he returned to work to account for his conference expenses in Concur, he observed a $406.00 charge from the Boston Renaissance Hotel dated March 26, 2022. *Id.* ¶ 28. He assumed the charge reflected the tab from his outing with colleagues and submitted it as a "business meal." *Id.* ¶ 29.

In the months that followed, noticing discrepancies, two Lilly human resources representatives, Kristina Hartman ("Hartman") and Eric McCray ("McCray"), sought to investigate

2

Cella's conference expenses. *Id.* ¶ 31–34. In a meeting with Cella on August 3, 2022, McCray explained that the March expense reflected a "no-show" charge from the Boston Renaissance Hotel that he had classified as a business meal expense. *Id.* ¶ 33. Cella responded that this was "an unintentional mistake" and apologized for the "inadvertent error." *Id.* ¶¶ 33–34. McCray further questioned Cella about a separate March 26, 2022, expense submitted by another employee who listed Cella as an attendee at a business meal that day. *Id.* ¶ 35. Cella maintained that he did not attend that meal and did not know why the employee included him as a participant. *Id.* ¶ 36. Nevertheless, in a second HR meeting on August 4, 2022, McCray and Hartman terminated Cella for a "pattern of behavior inconsistent with the Company's core values." *Id.* ¶ 38.

In due course, Cella applied for severance benefits under the Lilly Severance Pay Plan. *See id.* ¶ 41. As a Lilly employee, he was entitled to benefits under the Plan unless, among other things, he was terminated for "misconduct, including, but not limited to, dishonesty, [or] falsification of reports." ([Filing No. 19-1 at 21](#).) The Employee Benefits Committee denied his claim. ([Filing No. 21](#) ¶ 41.) He appealed that decision and was again denied. *Id.* ¶¶ 42–43.

### B. Procedural Background

Cella sued Lilly and the Plan to recover his benefits under the Plan pursuant to ERISA § 502(a). He also alleged that Lilly unlawfully interfered with his ability to obtain his benefits under the Plan in violation of ERISA § 510. He filed the original complaint on May 14, 2024. ([Filing No. 1](#).) Cella filed First and Second Amended Complaints on June 6, 2024 ([Filing No. 9](#)), and July 15, 2024 ([Filing No. 21](#)), respectively. The Second Amended Complaint lists the following claims: Count I: Denial of Benefits (the Plan) and Count II: Interference with Benefits (Lilly). *Id.* at 7-8. Lilly moved to dismiss the unlawful interference claim in the Second Amended Complaint on July 29, 2024. ([Filing No. 23](#).) Thereafter, Cella moved for leave to file a Third Amended Complaint.

3

(Filing No. 49.) The Magistrate Judge denied Cella's request (Filing No. 59). On December 17, 2024, the Court heard argument on the Motion to Dismiss (see Filing No. 60), which is before the Court for ruling.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, No. 09-cv-1045, 2010 WL 3893851, at *2, (S.D. Ind. Sept. 28, 2010) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint need not "match[] facts to legal elements," *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6)," *Yeftich*, 2010 WL 3893851, at *2 (citation and internal quotation marks omitted). In addressing a Rule 12(b)(6) motion, the Court treats all well-pleaded factual allegations as true and construes all reasonable inferences in favor of Cella as the non-movant. *Yeftich*, 2010 WL 3893851, at *2.

## III.    DISCUSSION

In Count II, Cella asserts a claim against Lilly USA for interference with benefits pursuant to ERISA § 510, 29 U.S.C. § 1140. Section 510 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant [in an employee benefits plan] … for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan." *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*,

4

741 F.3d 819, 826 (7th Cir. 2014) (citing 29 U.S.C. § 1140). Section 510 requires the plaintiff to show that the employer terminated him with the specific intent to interfere with his ERISA rights. *Id.* That intent must have been "at least a motivating factor for the adverse action against the plan participant." *Id.* Thus, to state a § 510 claim, the employee must allege three things: (1) he belongs to the class protected by § 510; (2) he was qualified for his position; and (3) he was discharged or denied employment under circumstances that provide some basis for believing that prohibitive intent existed. *Yeftich*, 2010 WL 3893851, at *3 (citing *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 135 (7th Cir. 1997)).

Lilly addresses only the third element. Lilly contends that Count II is insufficient because it lacks specific facts showing Lilly's decision to terminate Cella was motivated by an intent to deny his benefits under the Plan. (Filing No. 23-1 at 10.) In response, Cella denies engaging in any misconduct and argues that his tenure with the company, lack of disciplinary history, and several promotions demonstrate that Lilly specifically intended to deny him benefits to which he would have been entitled under the Plan. (Filing No. 39 at 7–9.)

Cella is mistaken. The Court agrees with Lilly that the Second Amended Complaint lacks any factual allegations that would support a plausible claim under § 510. Cella summarily concludes that "Lilly characterized his termination in this manner in order to … interfere with his severance benefits under the Plan" without stating any facts that would support the reasonable inference that Lilly's stated reason for firing him was pretext to avoid paying the cost of benefits. Although Cella rightly asserts that he is not required to plead facts corresponding to each element of the claim, the Court cannot accept "abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The complaint

5

must "raise a reasonable expectation that discovery will reveal evidence" supporting his claim. *See id.* In this respect, the allegations here fall short.

Hartman's and McCray's explanation of Cella's one-time accounting error as a "pattern" of misbehavior may be curious. But inadvertent or not, this mistake cost Cella his job, and the mere fact that he was fired and lost his benefits as a result is insufficient to state a § 510 claim. *Yeftich*, 2010 WL 3893851, at *4. The burden is on Cella to supply facts that would "provide some basis for believing" that Lilly were motivated by an intent to deprive him of benefits. *Id.* Allegations that he was terminated based on a previous exercise of his rights, for example, might have explained the "pattern" to which the HR representatives referred. *See Rowlands v. United Parcel Serv. Inc.*, No. 13-CV-59, 2015 WL 728296, at *2 (N.D. Ind. Feb. 19, 2015) (dismissing a § 510 claim where the complaint "simply" alleged that the plaintiff "would have gotten some benefits if she hadn't been fired, so the defendant must have fired her to keep her from getting those benefits"). The allegations concerning Cella's lengthy tenure and clean disciplinary history are insufficient to plausibly allege an ERISA § 510 claim. *See Gordon v. Am.'s Collectibles Network, Inc.*, No. 3:09-cv-206, 2010 WL 925785, at *6 (E.D. Tenn. Mar. 8, 2010) (holding that a plaintiff must allege that his employer acted with "the specific intent of avoiding ERISA liability when it discharged him. Otherwise, every employee discharged by a company with an ERISA plan would have a claim under § 510."). Accordingly, the Second Amended Complaint cannot survive the instant motion to dismiss.

Lilly also urges dismissal because Cella's requested remedies are not available for the § 510 claim. ([Filing No. 23-1 at 17](Filing No. 23-1 at 17).) Because the merits argument is dispositive, the Court need not address the remedies issue.

Finally, dismissal with prejudice is appropriate here because the Court has given Cella several opportunities to cure the deficiencies in his Complaint, and he has failed to do so. *See Lee v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (affirming dismissal with prejudice where the plaintiff failed to cure deficiencies after four opportunities to file an adequate pleading).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Lilly' Motion to Dismiss Count II of the Second Amended Complaint (Filing No. 23) is **GRANTED** and Count II is **dismissed** with prejudice.

**SO ORDERED**.

Date: 2/11/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Nehama Hanoch
Groom Law Group, Chartered
nhanoch@groom.com

Kimberly D. Jeselskis
JESELSKIS BRINKERHOFF AND JOSEPH LLC
kjeselskis@jbjlegal.com

Kara P. Wheatley
Groom Law Group, Chartered
kwheatley@groom.com

Mary Caroline Wood
Groom Law Group, Chartered
cwood@groom.com