UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIEL CELLA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-00814-TWP-MKK |
| | ) |
| LILLY USA LLC, and | ) |
| THE LILLY SEVERANCE PAY PLAN, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Lilly USA LLC ("Lilly USA") and the Lilly Severance Pay Plan[1] (the "Plan") (together, "Lilly") pursuant to Federal Rule of Civil Procedure 56 (Filing No. 73). After being terminated from Lilly USA and denied severance benefits under the Plan, Plaintiff Daniel Cella ("Cella") brought this action under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1193c ("ERISA"). Lilly successfully moved to dismiss one of Cella's two ERISA claims and now moves for summary judgment on the remaining claim, asserting that the denial of benefits under the Plan was not arbitrary or capricious. For the reasons explained in this order, summary judgment is **granted**.

**I.   BACKGROUND**

The Plan is an employee benefits plan governed by ERISA. It provides severance benefits to eligible employees if, among other circumstances, they are terminated "for reasons other than those specified in subsection 4.03" of the Plan (Filing No. 73-3 at 37, 42).[2] The severance benefits

---

[1] In Cella's original Complaint, the Plan was incorrectly named "Lilly Severance Payment Plan."

[2] Both parties filed copies of the administrative record across several exhibits and, in their briefs, use different methods of citing their respective copies. For ease of reference, the Court cites only the ECF filing and page numbers of the administrative record as filed by Lilly.

are paid from the general assets of Lilly. *Id*. Section 4.03 of the Plan provides that an employee is not eligible for severance benefits if his employment is terminated for "misconduct, including, but not limited to, . . . falsification of reports." *Id.* at 46. The Employee Benefits Committee (the "Committee") is the named fiduciary and administrator of the Plan, and the Committee has "powers and duties" to "interpret" the Plan and "decide any and all matters arising thereunder." ([Filing No. 73-6 at 59](#)).

Cella began his employment with Lilly USA in 2000 and worked in various roles for the next twenty-two years ([Filing No. 73-3 at 25](#)). He had a successful career at Lilly USA and maintained a clean disciplinary history until his termination in August 2022. The facts leading up to Cella's termination and denial of benefits center around a travel reimbursement request.

In fall 2021, Cella booked a room at the Boston Renaissance hotel for a spring 2022 conference in Boston, Massachusetts. *Id.* In February 2022, having forgotten that he had already booked a room for the conference, Cella booked another room at the Boston Park Plaza hotel. When Cella arrived in Boston, he checked into the Park Plaza hotel and was charged a $405.25 no-show fee by the Renaissance hotel. *Id.* at 13.

On March 26, 2022, Cella had lunch with a group of his co-workers, but he did not join them for dinner after the presentations. *Id*. at 26-27. On March 27, 2022, during the conference, Cella attended a business meal with Ryan Dawson ("Dawson"), another Lilly employee, and others, and Dawson put the March 27 business meal on his company credit card. *Id*. at 27.

Following the conference, Cella submitted a travel reimbursement request, which included the $405.25 no-show fee. He described the expense as a "business meal" on his reimbursement request, and Lilly USA approved the $405.25 reimbursement. *Id.* at 10, 13–14.

2

Cella's mischaracterization of the no-show fee implicates two of Lilly USA's policies. The Procedure for Employee Expense Reporting provides that "[s]ubmitted expenses must only be for legitimate business expenses," and "[g]uaranteed room charge[s] incurred due to non-cancellation" are not reimbursable. (Filing No. 73-4 at 16, 20). Lilly USA's Red Book Code of Business Conduct (the "Red Book") provides that Lilly USA employees must "ensure the integrity of [Lilly USA's] financial records by . . . following robust internal processes, controls, and accounting principles." *Id.* at 10.

Lilly USA began investigating Cella's reimbursement request a few months after Cella submitted it, upon noticing that he had seemingly requested reimbursement for more than three business meals in a single day (Filing No. 73-3 at 5). Lilly USA confirmed that the $405.25 expense was a no-show fee and not a business meal expense, *id.* at 11, 16, and Cella was then asked about the discrepancy during a phone call with two other Lilly USA employees. During the call, Cella at first reaffirmed that the $405.25 fee was for a dinner at the Renaissance hotel. After being told that the fee was in fact a no-show fee, Cella conceded that the fee was incorrectly described in his request and was not a reimbursable expense. Cella then explained that he had not realized he booked two rooms, that he had mistakenly assumed that the fee was for a dinner with coworkers at the Renaissance hotel, and that the false information was the result of an honest mistake. *Id.* at 19–20. During the same meeting, Cella was asked about a reimbursement request submitted by another employee, Ryan Dawson ("Dawson"), for a business meal. *Id.* at 9, 19. Dawson's reimbursement request identified Cella as one of the meal's attendees on March 26, 2022, but Cella stated he did not attend the meal on that date. *Id.* at 19.

The next day, Lilly USA terminated Cella's employment. *Id.* at 5–6. Lilly USA found that Cella had "falsified the expense report, a direct violation of the US procedure for Employee

3

Expense Reporting and The Red Book" by "recategoriz[ing] the $405 hotel expense to reflect 'Business Meal'," which Lilly USA considered to be "misconduct" and "an immediately separable offense." *Id.* at 5. In connection with Cella's termination, Lilly USA informed Cella that he is not eligible for severance benefits under the Plan. *Id.* at 33.

Regardless, on October 13, 2022, Cella submitted a claim for severance benefits. *Id.* at 24–28. In his claim, he reasserted that the false reimbursement request was the result of an honest mistake, and he argued that Lilly USA was enforcing its policies inconsistently, since Dawson had misidentified Cella as a meal attendee in his reimbursement request but was not terminated. *Id.* at 26–27. However, the Committee denied Cella's claim (the "Initial Denial"), finding him ineligible for benefits under Section 4.03 of the Plan (Filing No. 73-6 at 43–44).

Cella appealed the initial benefit denial, reasserting his prior arguments and disputing the Committee's findings that Lilly USA had conducted a "thorough investigation" and that Cella had attended more than three meals in the same day. *Id.* at 47–49. Cella also provided additional information to the Committee regarding Dawson and Lilly's unequal application of its policies. The Committee affirmed its denial on appeal (the "Appeal Denial"). *Id.* at 27–30, 47–49, 71–73.

One year after the Committee issued the Appeal Denial, Cella filed this lawsuit. Soon thereafter, Cella twice amended his complaint. In his Second Amended Complaint, which is the operative pleading, Cella asserts two claims: (I) denial of benefits in violation of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B); and (II) interference with benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140. Lilly filed a motion to dismiss Count II, which the Court granted (Filing No. 62). Lilly then filed the instant Motion for Summary Judgment on Count I which is now ripe for the Court's review.

4

## II.     LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

The standard of review of a denial of benefits under Section 502(a)(1)(B) of ERISA is unique, however, because the Court uses a "*de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority, then denial of benefits is reviewed under the "arbitrary and capricious" standard. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 860–61 (7th Cir. 2009). "Under the arbitrary and capricious standard, the reviewing court must ensure only that a plan administrator's decision

has rational support in the record. Put simply, an administrator's decision will not be overturned unless it is downright unreasonable." *Edwards*, 639 F.3d at 360 (citation modified). Review under this deferential standard is not a "rubber stamp." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). The Court's review focuses on whether:

> (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005) (citation omitted).

### III. DISCUSSION

Lilly argues that the Committee's denial decisions were reasonable and consistent with the plain terms of the Plan (Filing No. 73-1 at 12–17). Cella responds that summary judgment should be denied because a reasonable factfinder could conclude that the Committee's decisions were arbitrary and capricious as the Committee did not afford him a full and fair review and was subject to a conflict of interest and bias (Filing No. 80 at 15–19). The Court will address the adequacy of the Committee's review and the Committee's conflict of interest in turn.

As an initial matter, in its Reply, Lilly argues that Cella's response does not comply with Local Rule 56-1 and requests that its statement of material facts therefore be deemed admitted (Filing No. 82). The Court **denies** this request as it can easily differentiate the facts, conclusions of law, and arguments in Cella's brief, and the material facts are largely undisputed.

A. **Adequacy of Committee's Review**

The Committee must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133(2). The "core requirements of a full and fair review" include: "(1) knowing what evidence the decision-maker relied upon;

(2) having an opportunity to address the accuracy and reliability of that evidence; and (3) having the decision-maker consider the evidence presented by both parties prior to reaching the decision." *Estate of Gifford v. Operating Eng'rs 139 Health Benefit Fund*, 126 F.4th 509, 821 (7th Cir. 2025). "ERISA also requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for full and fair review by the administrator." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010) (citation modified).

Cella contends that the Committee did not afford him a full and fair review because it failed to communicate the specific reasons for the denial, ignored his evidence, and relied on an inadequate investigation by Lilly USA. Lilly replies that the Committee adequately explained its reasoning, considered Cella's evidence, and appropriately relied on Lilly USA's investigation.

In its Initial and Appeal Denials, the Committee explained that Section 4.03 of the Plan provides that an employee is not eligible for benefits "if his employment with [Lilly USA] is terminated for . . . misconduct, including . . . falsification of reports," (Filing No. 73-6 at 43, 71), and that Cella was terminated by Lilly USA for falsifying his reimbursement request. The Committee specifically stated, "Mr. Cella's employment was terminated by Eli Lilly and Company for the disciplinary reason of misconduct for falsification of an expense report. Accordingly, . . . the Committee determined that at the time of Mr. Cella's termination he was not eligible for severance pay under the Plan." *Id.* at 44. On appeal, the Committee reiterated, "[t]he reason for Mr. Cella's termination was misconduct related to falsification of an expense report; this is clear in the employment records. . . . No information or documentation reviewed in connection with Mr. Cella's appeal provided any reason for the Committee to determine that Mr. Cella is eligible for a severance benefit under the Plan." *Id.* at 72.

7

The Committee explained that Cella was ineligible for benefits because he was terminated for falsifying a report—specifically, for submitting a reimbursement request that incorrectly described a non-reimbursable no-show fee as a reimbursable meal charge. That explanation was sufficient for Cella to appeal the Initial Denial and further challenge his denial of benefits in this litigation. *See Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 345 (6th Cir. 2011) (finding that because benefits determination was not "directly intertwined" with reason for termination, "the Plan Administrator needed to look only at the stated reason for [plaintiff's] termination, not the underlying conduct, to determine if such reason fell under the list of exclusions outlined by the Plan."). The Committee did not need to further explain "the reasoning behind the reasons, in this case the interpretive process that generated the reason for the denial." *Id.* at 922.

Cella also argues that "[t]here is nothing" in the Initial Denial, Appeal Denial, Committee minutes, claim packet, or appeal packet "to indicate that the [Committee] looked into or consider [*sic*] any of the information provided by Mr. Cella regarding Lilly's investigation that prompted his termination or Dawson." (Filing No. 80 at 11–12). The administrative record shows otherwise. The Initial Decision reflects that the Committee based its decision on "the information provided," and the Committee's meeting minutes state that "[t]he Committee reviewed materials, including information provided by [Cella]." (Filing No. 73-6 at 43; Filing No. 73-4 at 30). The Appeal Decision similarly states, "[t]he Committee reviewed the following documents in connection with the appeal: . . . The supplemental information (and attachment) provided by [Cella] on April 9, 2023, for the Committee's review of the appeal," and the minutes for the appeal meeting reflect that a Lilly USA representative "shared documents received with the appeal packet and other

8

relevant documents" (Filing No. 73-6 at 71; Filing No. 73-4 at 26). The Committee expressly states that it reviewed Cella's evidence, and thus, did not deprive him of a full and fair review.

The Committee's investigation into Cella's termination and its reliance on Lilly USA's investigation were also adequate under ERISA. The Committee's decisions set out the undisputed facts from Lilly USA's investigation that reasonably supported its denial of benefits—that Cella falsified a reimbursement request by describing a non-reimbursable no-show fee as a reimbursable a meal expense. Even though Cella may have mistakenly falsified his reimbursement request and Dawson may have falsified a reimbursement request, the fact remains that Cella *did* falsify his reimbursement request and that he *was* terminated for that reason.

The Committee was not obligated to elaborate on Cella's evidence because that evidence did not contradict the Committee's findings. Cella's evidence did not dispute that his reimbursement request was false or that the falsified reimbursement request was the reason for his termination. Cella instead focused on whether he *intentionally* falsified the reimbursement request, and whether he *should have been* terminated for falsifying the reimbursement request.

Cella similarly argues that the Lilly USA investigation on which the Committee relied was inadequate, and the Committee should have "conducted a more thorough investigation." (Filing No. 80 at 18). Cella cites several cases in which district courts found that the plan administrator's evidentiary record was insufficient. But as Lilly points out on reply, in each of these cases, the evidence presented by the claimant disputed the reason for the claimant's termination and/or whether the reason for his termination made him ineligible for benefits. *See Mohamed v. Sanofi-Aventis Pharms.*, No. 06 Civ. 1504, 2009 WL 4975260 (E.D. Pa. Dec. 22, 2009) (remanding denial of benefits where employee was deemed ineligible for benefits because he was terminated "for cause," because, in part, administrator did not explain what part of the plan's broad definition of

9

"for cause" applied to claimant and did not consider any evidence in claimant's favor); *Page v. Bancroft Neurohealth, Inc.*, 575 F. Supp. 2d 664, 676–80 (E.D. Pa. 2008) (denying cross-motions for summary judgment where claimant offered evidence that he was terminated as part of a reduction in force, which would leave him eligible for benefits, rather than for performance issues, which would make him ineligible); *Anderson v. Sotheby's, Inc.*, No. 04 Civ. 8180, 2006 WL 1722576 (S.D.N.Y. June 22, 2006) (overturning administrator's denial of severance benefits where benefits were not available to employees who declined an "equivalent position," and there was insufficient evidence before the administrator that claimant had been offered an "equivalent position"); *Poehlmann v. Deutsche Bank Ams. Severance Pay Plan*, No. Civ.A. 04-2669, 2005 WL 1875529, at *2, 9 (E.D. Pa. Aug. 8, 2005) (granting plaintiff's motion for summary judgment where plan precluded benefits for employees terminated for "unsatisfactory performance," the administrator had sole discretion to determine what constitutes "unsatisfactory performance," and the administrator "wholly abdicated its responsibility to make even a cursory investigation into" the "two sharply divergent accounts of Plaintiff's sales performance").

Here, by contrast, there is no dispute that Cella falsified his reimbursement request (unintentionally or otherwise), that this falsified report was the reason for his termination, and that an employee terminated for falsifying a report is ineligible for benefits under the Plan. Cella does not explain how any further investigation might have changed the Committee's decisions. The Committee did not act arbitrarily or capriciously by denying Cella's claim based solely on the materials presented by Lilly USA and Cella.

Cella also cites the United States Supreme Court's decision in *Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (1965) ("*Nord*"), and an appellate decision citing *Nord*, *Love v. National City Corp. v. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009) ("*Love*"). In *Nord*,

10

a disability benefits case, the Supreme Court stated that under ERISA, "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Nord*, 538 U.S. at 834. In *Love*, another disability benefits case, the Seventh Circuit similarly stated that a plan administrator "must address any reliable, contrary evidence presented by the claimant." *Love*, 574 F.3d 397. Cella argues that under this line of cases, the Committee erred by failing to specifically address his evidence (Filing No. 80 at 19). Lilly responds that *Love* and *Nord* are inapplicable because they relate only to a plan administrator's consideration of medical evidence in disability benefits cases (Filing No. 82 at 19–20).

Even assuming that *Nord* and *Love* apply here, the Committee's decision would not be arbitrary and capricious. In *Nord*, the Supreme Court explained that courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with [the claimant's evidence]." 538 U.S. at 834. All that is required is a "reasonable explanation" for the determination. *Love*, 574 F.3d at 397. The Committee reasonably explained the reason it denied Cella's claim for severance benefits, and it was not required to specifically explain why it did or did not credit Cella's inapposite evidence that he *inadvertently* falsified his reimbursement request or *should not have been* terminated for falsifying a report.

The Committee considered Cella's evidence, adequately explained the reason for its decisions, and reasonably based its decisions on evidence in the administrative record and the plain language of the Plan. The Committee afforded Cella a full and fair review initially and on appeal.

**B.**     **Conflict of Interest and Bias**

Cella alleges that the Committee has a conflict of interest because it "both determines eligibility for benefits, authorizes benefit payments and pays the benefits out of the general assets of Lilly." (Filing No. 80 at 16). He points out that the Committee decided both his Initial Denial and Appeal Denial. Cella asks the Court to "weigh this conflict as a factor in determining whether

11

there is an abuse of discretion." *Id.* at 16. Lilly replies that the Committee's "structural conflict of interest" does not make the its decisions arbitrary or capricious, since this is not a "borderline" case where a conflict would carry more weight (Filing No. 82 at 10–11 (quoting *Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 377 (7th Cir. 2009))). The Court agrees with Lilly.

A conflict of interest is but one consideration for the Court when reviewing the lawfulness of benefit denials, and "will act as a tiebreaker when the other factors are closely balanced." *Metro. Life*, 554 U.S. at 117. "The mere existence of a conflict, however, is not justification for heightening the level of scrutiny, either on its own or by enhancing the significance of other factors." *Id.* at 123. A conflict of interest "is a given in almost all ERISA cases," so it is less critical than the gravity of the conflict. *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009).

Here, the Committee's conflict of interest carries little to no weight. As explained above, this is not a "borderline" case. The undisputed evidence before the Committee reasonably supported its denial of benefits based on a plain reading of the Plan. Absent any evidence of actual bias or improper claim administration, the Committee's "structural" conflict of interest does not turn the tide in Cella's favor. The Court further agrees with Lilly that even though the Committee decided both the Initial and Appeal Denials, its decision was not improperly biased. ERISA does not require different reviews for the initial and appeal levels for severance benefits plans. *See A.S.C.I.B., L.P. v. Carpenter*, No. 20-CV-1125, 2023 WL 2993397, at *5 (W.D. Tex. Apr. 18, 2023).

"On the whole, there is simply no basis for concluding that the administrator acted arbitrarily or capriciously because the Committee's decisions to uphold the original denial of severance benefits under the Plan is reasonable and there is rational support in the administrative record for its conclusion." *Fountain v. Zimmer Inc.*, No. 17-CV-323, 2021 WL 2125287, at *6 (N.D. Ind. May 25, 2021). The administrative record provides clear and undisputed evidence that

reasonably supports the Committee's decisions, and the Committee offered a reasoned explanation for those decisions. Based on the undisputed material facts, the Committee did not act arbitrarily or capriciously in denying Cella benefits under the Plan, and Lilly is entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Lilly's Motion for Summary Judgment (Filing No. 73) is **GRANTED**. Summary judgment is entered in favor of Lilly on Count I of Cella's Second Amended Complaint, and all claims having now been resolved.

Final judgment will issue under separate order.

**SO ORDERED**.

Date:    11/10/2025

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Kimberly D. Jeselskis
JESELSKIS BRINKERHOFF AND JOSEPH LLC
kjeselskis@jbjlegal.com

Kara P. Wheatley
Groom Law Group, Chartered
kwheatley@groom.com

Mary Caroline Wood
Groom Law Group, Chartered
cwood@groom.com